Jo Ann FINLEY, Plaintiff,

v.

JOHNSON OIL COMPANY d/b/a Amoco Bigfoot, Defendant.

No. EV 98–221–C–Y/H.

United States District Court, S.D. Indiana, Evansville Division.

Jan. 18, 2001.

Bernard G. Reisz, Evansville, IN.

Robert F. Barron, II, Allison K. Comstock, Kahn Dees Donovan & Kahn, Evansville, IN.

H. Linwood Shannon, III, Fine & Hatfield, Evansville, IN.

## ORDER ON MOTION TO QUASH SUBPOENA DUCES TECUM

HUSSMANN, United States Magistrate Judge.

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on the Motion to Quash Subpoena Duces Tecum filed November 8, 2000, by a non-party, Impact Christian Health Center, Inc. A hearing was held before the Magistrate Judge on December 20, 2000, at 11:00 a.m. Defendant was represented by counsel, H. Linwood Shannon, III. The non-party petitioner, Impact Christian Health Center, Inc., was represented by counsel, Allison K. Comstock. Plaintiff had been notified of this hearing, but did not appear in person or by counsel.

The Magistrate Judge, being duly advised, ordered that the non-party petitioner, Impact Christian Health Center, Inc. ("Impact"), file with this court in a sealed envelope Impact's medical records pertaining to Jo Ann Finley as requested in the subpoena duces tecum. The Magistrate Judge reviewed those records *in camera*.

### Memorandum

The Motion to Quash Subpoena Duces Tecum filed by Impact Christian Health Center, Inc. (hereafter "Impact") raises the issue of the release of mental health records.

It must be noted that this case is before the court pursuant to federal question jurisdiction. The plaintiff has raised claims for damages under Title VII and the ADEA. Pursuant to Federal Rule of Evidence 501, issues of privilege must be determined by the principles of common law as those principles may be interpreted by the courts of the United States in light of reason and experience. Because this civil action does not include claims or defenses under Indiana law, evidentiary privileges under Indiana law are not determinative, at least where federal law has established that a privilege exists.

■ In *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the U.S. Supreme Court recognized that confidential communications between a patient and a licensed psychotherapist, psychologist, psychiatrist, or licensed social worker are protected by a federal common law privilege. The scope of the privilege is quite broad in that it is not limited strictly to medical providers, but includes communications to social workers as well.[1] In addition to being broad in scope, the privilege is rather strict in its application. The Supreme Court states in this regard:

We part company with the Court of Appeals on a separate point. We reject the balancing component of the privilege implemented by that court and a small number of States. (Footnote omitted). Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn,* if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." 449 U.S., at 393, 101 S.Ct., at 684.

These considerations are all that is necessary for decision of this case. A rule that authorizes the recognition of new privileges on a case-by-case basis makes it appropriate to define the details of new privileges in a like manner. Because this is the first case in which we have recognized a psychotherapist privilege, it is nei-

---

1. "[D]rawing a distinction between the counseling provided by costly psychotherapists and the counseling provided by more readily accessible social workers serves no discernible public purpose." *Jaffee,* 518 U.S. at 17, 116 S.Ct. 1923.

ther necessary nor feasible to delineate its full contours in a way that would "govern all conceivable future questions in this area." *Id.,* at 386, 101 S.Ct., at 681.[19]

> 19. Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.

*Jaffee,* 518 U.S. at 17–18, 116 S.Ct. 1923.

Applying *Jaffee,* and after *in camera* review of the records, the first issue which must be addressed is whether these records are "mental health records." The documents provided to the court are records from "Impact Christian Health Center," which is a health clinic which treats lower income clientele. The records recite histories taken and observations made by a doctor, Karen Neeley, M.D., and a number of registered nurses during a number of visits to the center. The "findings" recorded in the documents include primarily observations about medical problems, such as hip pain. However, from time to time in the records, mention is made of "depression." Records of medications prescribed also are found within the documents, but it is not clear which particular medications are given to treat which particular conditions. There are no records which represent clinical evaluations of depression, or which contain any patient-therapist or psychiatrist materials, unless the taking of a general history from the patient can be said to constitute a mental health record. There is no indication in the file that Dr. Neeley is a psychiatrist. From a review of the records as a whole, it appears that she is a general practitioner.

■ Given *Jaffee's* express holding that the federal common law mental health records privilege encompasses communications made to "more readily accessible social workers," this court will conclude that communications to general practitioners at health clinics fall within the scope of the federal common law privilege.

Are there circumstances under which the privilege does not apply or can be said to be waived? The footnote in *Jaffee* recited above

suggests that the privilege may have to give way if a serious threat of harm to the patient or another can be averted *only* by means of a disclosure. This concept is not applicable here.

■ Cases following *Jaffee* have suggested that waiver of the privilege might occur if a person asserts claims of emotional distress damages. *See Jackson v. Chubb Corp.,* 193 F.R.D. 216 (D.N.J.2000). However, at argument, the parties in this case stipulated that the only claim remaining in this case is whether plaintiff suffered financial loss when she was denied promotion to an assistant manager's position. Plaintiff has specifically and formally waived any claims for emotional distress arising out of that alleged discriminatory decision. Therefore, this court cannot conclude that plaintiff has waived the privilege by bringing her emotional state into play.

Another case suggests that waiver of the privilege may occur if the patient knows that the records or communications will be shared with others, and therefore were never intended to be confidential. *See Scott v. Edinburg,* 101 F.Supp.2d 1017 (N.D.Ill.2000). However, there is no evidence that the patient here was ever told that communications within these records would be shared outside the medical community. The facts in this case are significantly different than those in *Scott.* This court finds no evidence in the record providing that plaintiff was ever made aware that her records would be shared with any third party, and indeed the fact that Impact has filed its Motion to Quash Subpoena Duces Tecum in this case suggests that the records are not shared.

■ In conclusion, we have some medical records here that contain communications between a patient and a general practitioner that deal with "depression." These notes are sandwiched between rather normal records of physical examinations and other items that are not "mental health" records. Although these items are not strictly notes taken by a psychotherapist, *Jaffee* indicates that the scope of the federal mental health privilege is quite broad. Moreover, the privilege must be strictly applied-the court is not at liberty

to "balance" the evidentiary need for the documents against the patient's interest in privacy. To this extent, the federal privilege recognized in *Jaffee* protects these records even more strictly than the privilege Indiana has defined in its statute.[2]

■ This court therefore concludes that the federal common law privilege relating to disclosure of mental health communications between a patient and a physician does apply to these records, and the basis for the defendant's need for the records is irrelevant, at least under these circumstances where the plaintiff does not seek to recover damages for emotional distress.

The Motion to Quash Subpoena Duces Tecum is **GRANTED.** Defendant will not be entitled to review the records at issue.