Reversed by unpublished opinion. Chief Judge TRAXLER wrote the majority opinion, in which Judge RUSSELL joined. Judge WYNN wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
TRAXLER, Chief Judge:
Kim Kinder was the government’s primary witness at trial against Michael White, who was charged with arson-related offenses arising from an October 2009 fire that destroyed a duplex apartment building that White owned in Van, West Virginia. See United States v. White, 771 F.3d 225 (4th Cir.2014). The district court granted White’s pretrial motion for production of Kinder’s mental health records for use during cross-examination, rejecting the argument that the records were protected from disclosure by the psychotherapist-patient privilege. See Jaffee v. Redmond, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). We conclude that the district court’s order of disclosure was in error. To the extent the district court has retained any of Kinder’s mental health records, the court is required to return or destroy them.
I.
Shortly before White was indicted for conspiring with Kinder and Kinder’s husband to burn White’s duplex for the insurance proceeds, Kinder pled guilty to a one-count information charging her with conspiracy to commit arson in violation of 18 U.S.C. § 844(i). In response to the district court’s questions during the plea hearing, Kinder told the court that she was taking numerous medications, including anti-depressants, anti-anxiety drugs, and muscle relaxers. Kinder also revealed to the court she had received, within the preceding ten years, extensive psychiatric treatment. Kinder claimed that she had been diagnosed with bipolar disorder and schizophrenia. Kinder also explained that during that time period, she was admitted — at least once involuntarily — as an inpatient to four different hospital mental health units; the most recent of these mental health admissions had occurred ap *128 proximately one year before the plea hearing.
Based on the information revealed by Kinder to the judge during her plea hearing, White filed a pre-trial motion under Criminal Rule 17(c) seeking “early production” of Kinder’s medical records maintained by each of the four hospitals where Kinder received inpatient treatment. Specifically, White wanted each hospital to produce any document “relate[d] to Kim Kinder’s psychiatric history, diagnosis, treatment and drug usage and abuse.” J.A. 18. In support, White relied on a West Virginia statute permitting access to confidential mental health records if a court determines the relevance of such information “outweigh[s] the importance of maintaining ... confidentiality.” W. Va. Code § 27-3-l(b)(3). The government opposed production of such documents, arguing that Kinder’s mental health records were protected from disclosure by the therapist-patient privilege recognized by the Supreme Court in Jaffee. See 518 U.S. at 15, 116 S.Ct. 1923. Without objection, Kinder intervened in the motion and filed an objection through counsel, adopting the government’s argument with regard to privilege and noting further that White did not need the records for impeachment purposes since her mental health history was already a matter of public record in the transcripts of her plea colloquy. Kinder also appeared at the hearing on White’s pretrial motion and expressly invoked the therapist-patient privilege.[1] The district court, relying on the West Virginia statute, found “that the requested documents [were] sufficiently relevant ... to warrant in camera review,” J.A. 91, to determine if White’s evidentiary need “outweigh[ed] the importance of maintaining [Kinder’s] confidentiality,” W. Va.Code § 27-3-l(b)(3). Thus, the district court entered a preliminary order directing each of the four hospitals to produce Kinder’s mental health records to the district court alone for an in camera determination of admissibility.
After conducting its in camera review, the district court determined that to the extent the hospital records revealed any communications from Kinder to, or any diagnoses from, her psychiatrists, they fell within the scope of the patient-therapist privilege.[2] The district court then “turn[ed] to the question of whether the privilege may be overcome by the assertion of [White’s] constitutional right to the confidential materials.” J.A. 111. Observing that the psychotherapist-patient privilege recognized in Jaffee is not absolute, see 518 U.S. at 18 n. 19, 116 S.Ct. 1923 the district court concluded that “[t]he psychotherapist-patient privilege contemplates an exception where necessary to vindicate a criminal defendant’s constitutional rights.” J.A. 119. And, having concluded such an exception exists, the district court considered whether Kinder’s privacy rights pro *129 tected by the privilege should give way either to White’s Sixth Amendment right to effectively confront the witnesses against him or to his right to a fundamentally fair trial under the Due Process Clause of the Fifth Amendment. Although the district court decided that White was not entitled to Kinder’s mental health records in order to vindicate his rights under the Confrontation Clause, the court concluded that "White could obtain the records under the Due Process Clause. The court reasoned that because Kinder was the “central government witness against [White] and the ... case may well hinge on her credibility,” J.A. 123, White’s right to a fundamentally fair trial entitled him to disclosure of mental health records that were otherwise protected by the psychotherapist-patient privilege. Accordingly, the district court ordered the disclosure under seal of specified documents that “cast['] substantial doubt on [Kinder’s] mental acuity during the time of the purported conspiracy,” J.A. 124, and raised questions about Kinder’s 'state of mind when she was testifying before the grand jury and cooperating with the government’s investigation of White.[3]
II.
Kinder argues that in deciding whether her mental health records were protected from disclosure by the psychotherapist-patient privilege, the district court engaged in the type of balancing analysis expressly rejected by the Supreme Court in Jaffee. We review a district court’s “evidentiary rulings, including rulings on privilege, for abuse of discretion,” but we review “factual findings as to whether a privilege applies for clear error, and the application of legal principles de novo.” United States v. Hamilton, 701 F.3d 404, 407 (4th Cir.2012). By definition, an abuse of discretion occurs if the court commits “[a]n error of law.” United States v. Basham, 561 F.3d 302, 326 (4th Cir.2009). We agree with Kinder that the court’s use of the balancing approach was erroneous and that its decision to disclose Kinder’s mental health records therefore amounted to an abuse of discretion.
A.
Under Federal Rule of Evidence 501, matters of privilege in federal courts are to be resolved based on the common law “as interpreted by United States courts in the light of reason and experience” unless it is contrary to the “United States Constitution,” a “federal statute,” or the “rules prescribed by the Supreme Court.” In Jaffee, the Supreme Court resolved a circuit split when it “recognize[d] a psychotherapist privilege under Rule 501” in the context of a § 1983 excessive force action. 518 U.S. at 7, 116 S.Ct. 1923. The Court concluded that a social worker’s notes from her counseling sessions with the defendant police officer were protected by the psychotherapist-patient privilege from disclosure to the plaintiff for use in cross-examination. The Supreme Court reasoned that “[effective psychotherapy ... depends upon an atmosphere of confidence and trust” and that “the mere possibility of disclosure” of “confidential communications made during counseling sessions” could hinder productive therapy. Id. at 10, 116 S.Ct. 1923. “By protecting confidential communications between a psycho *130 therapist and her patient from involuntary disclosure, the ... privilege thus serves important private interests.” Id. at 11, 116 S.Ct. 1928. Most importantly, the Court found that, like other testimonial privileges, the psychotherapist privilege serves the greater public interest by facilitating effective mental health care — “a public good of transcendent importance.”' Id.[4] The Court concluded that a “privilege protecting confidential communications between a psychotherapist and her patient ‘promotes sufficiently important interests to outweigh the need for probative evidence.’ ” Id. at 9-10, 116 S.Ct. 1923 (quoting Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 68 L.Ed.2d 186 (1980)). In other words, the public benefit produced by the recognition of the psychotherapist-patient privilege is sufficiently weighty to trump the cost to the administration of justice of precluding the use of relevant evidence.
Of course, like other testimonial privileges, the psychotherapist-patient privilege is not absolute. The Court recognized that the privilege has limits but left the delineation of boundaries for future cases: “Although it would be premature to speculate about most future developments in the federal psychotherapist privilege, we do not doubt that there are situations in which the privilege must give way.” Id. at 18 n. 19, 116 S.Ct. 1923. The Court hinted at one potential exception — where “a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist.” Id. Circuit courts, however, have disagreed over when a “dangerous patient” exception to the privilege would apply, if at all. See United States v. Glass, 133 F.3d 1356, 1360 (10th Cir.1998) (applying the Jaffee rule in a criminal case, and creating a narrow exception to the rule where “disclosure [is] the only means of averting [imminent] harm”); cf. United States v. Chase, 340 F.3d 978, 992 (9th Cir.2003) (en banc) (refusing to recognize a dangerous-patient exception to the Jaffee rule).
B.
In ordering the partial disclosure of Kinder’s psychiatric records, the district court concluded that an exception to the psychotherapist-patient privilege must be made “where [the privileged information is] necessary to vindicate a criminal defendant’s constitutional rights.” J.A. 119. And in this particular case, the district court decided that because Kinder was the star witness for the prosecution, it was necessary for White to have this otherwise privileged evidence for impeachment purposes in order to fully exercise his Fifth Amendment right to a fundamentally fair trial.
In our view, this conclusion is demonstrably at odds with both Jaffee and basic principles underlying the recognition of testimonial privileges. All common law testimonial privileges are inherently “in derogation of the search for truth,” United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); that is, privileges constitute exceptions to the baseline rule “that the public ... has a right to every man’s evidence.” United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950) (internal quotation marks omitted). “New or expanded privileges may be recognized only to the very limited extent that permitting a refusal to testify *131 or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.” United States v. Sterling, 724 F.3d 482, 502 (4th Cir.2013) (internal quotation marks omitted) (emphasis added). Thus, a privilege must “serve[ ] public ends,” Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), that are more important than the effect of denying the public the use of relevant, probative evidence. Accordingly, when the Court recognizes or expands a privilege under Rule 501, it necessarily has already determined that the privilege in question “promotes sufficiently important interests to outweigh the need for probative evidence.” University of Pennsylvania v. EEOC, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (internal quotation marks omitted).
Jajfee applied this reasoning, holding that a “privilege protecting confidential communications between a psychotherapist and her patient promotes sufficiently important interests to outiveigh the need for probative evidence.” 518 U.S. at 9-10, 116 S.Ct. 1923 (internal quotation marks omitted) (emphasis added). Thus, before recognizing the existence of the psychotherapist privilege under Rule 501, the Supreme Court in Jajfee first compared the interests promoted by the privilege against interests promoted by the general rule that the public is entitled to “every man’s evidence.” But now that the psychotherapist privilege has been recognized, it would be both counterproductive and unnecessary for a court to weigh the opponent’s evidentiary need for disclosure any time the privilege is invoked. Indeed, Jaf-fee explicitly rejects such an ad hoc balancing approach because it would frustrate the aim of the privilege by making its application uncertain: “Making the.promise of confidentiality contingent upon a trial judge’s later evaluation of the relative importance of the patient’s interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege.” Id. at 17, 116 S.Ct. 1923 (emphasis added).
Here, the district court appears to have employed precisely such a weighing of Kinder’s privacy interest versus White’s evidentiary need. White’s motion for disclosure was made pursuant to a West Virginia statute that allows for disclosure of privileged medical information if the court finds that “the information is sufficiently relevant ... to outweigh the importance of maintaining the confidentiality.” W. Va. Code § 27 — 3—1(b)(3). The district court’s preliminary order directing production of the records for in camera review relied expressly on the West Virginia statute. The district court’s final order of disclosure, while acknowledging Jaffee’s “ardent[] rejection of] this context-specific, ad hoc approach to the applicability of the privilege,” J.A. 111, ordered the disclosure of privileged mental health records based on the “perfect storm of facts” before it, including most significantly White’s need to challenge the credibility of “the central government witness,” J.A. 123. Such an analysis runs contrary to Jajfee, which made clear the federal psychotherapist-patient privilege “is not rooted in any constitutional right of privacy but in a public good which overrides the quest for relevant evidence; the privilege is not subject to a balancing component.” Glass, 133 F.3d at 1358 (internal quotation marks omitted).
We find no basis in the record to justify disclosure of Kinder’s records that fall within the protective scope of the psychotherapist privilege. Accordingly, we conclude that the district court’s order of disclosure was in error. We reverse the court’s ruling and direct that Kinder’s mental health records, to the extent the *132 district court has retained copies thereof, be returned to the hospitals that produced the records or be destroyed.
III.
Regarding the issue of waiver, given the novelty of this area of the law and the fact that it has never been pursued — not in this court on appeal or in the district court below — we decline to address it. In fact, in the proceedings before the district court, White’s counsel expressly told the district court that White did not take the position that Kinder’s statements at her Rule 11 hearing constituted a waiver of the privilege:
THE COURT: Are you saying that anything that you learned through her statements in her plea hearing, you should be allowed to cross-examine her on?
[WHITE’S COUNSEL]: Yes, sir, I do. THE COURT: All right. But you’re not saying that she waives the privilege and, therefore, you get access to the records because of what she said in the plea hearing ?
[WHITE’S COUNSEL]: No. What I’m saying is that’s what I understand this hearing to be about, that whether or not this defendant, in connection with his right of confrontation, is allowed to review those notes made as they pertain to a diagnosis and treatment.
THE COURT: Well, I don’t think you answered my question there and I want to be very clear on this.
(WHITE’S COUNSEL]: Okay.
THE COURT: ... [T]he purpose of this hearing is much broader than that. I want to have a full discussion of this whole issue, but ... my specific question there was, are you, arguing that because she disclosed a small amount of information at the plea hearing ... that she has, therefore, waived the privilege with regard to all these records?
[WHITE’S COUNSEL]: No, I’m not. I don’t say that.
J.A. 49 (emphasis added). Hence, the district court specifically noted in its order that whether Kinder waived her privilege was a non-issue, as “both parties to this case agree that Kinder has not waived her privilege by responding to the Court’s questions at the plea hearing.” J.A. 109.
Absent unusual circumstances, this court does not address arguments on appeal that were not raised in the district court. See Holland v. Big River Minerals Corp., 181 F.3d 597, 605 (4th Cir.1999); see also Crawford Prof'l Drugs, Inc. v. CVS Care-mark Corp., 748 F.3d 249, 267 (5th Cir.2014) (“The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal.” (internal quotation marks omitted)). And here we are presented with an even more compelling basis not to address the issue of waiver than White’s failure to argue it below — White’s contrary assertion to the district court disavowing any reliance on a waiver theory.
On top of that, White has not even argued on appeal that this court should affirm on the basis of waiver. White does not mention waiver in his brief, except to muse in passing that the district court “could have properly found” that Kinder waived the privilege, Brief of Appellee at 11 (emphasis added), even though White took the opposite position below. This fleeting mention of waiver in a single sentence couched in conditional terms is not an argument — it’s an observation. It is not the practice of this court to consider an argument that has not been developed in the body of a party’s brief or identified in the headings. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 n. 7 (4th Cir. 2006) (single “conclusory remark” in brief *133 “insufficient” to constitute an argument); see also Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir.1997) (“[A]n argument consisting of no more than a conclusory assertion ... will be deemed waived.”)- “[A] party’s failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.” Hatley v. Lockhart, 990 F.2d 1070, 1073 (8th Cir.1993) (internal quotation marks omitted).
We recognize that, in limited circumstances, this court may affirm a district court’s ruling on “any theory, argument, or contention which is supported by the record.” Blackwelder v. Milkman, 522 F.2d 766, 771 (4th Cir.1975) (internal quotation marks omitted). The court does not follow this practice, however, when doing so “unfairly prejudice^] the appellant in [the] presentation of his case.” United States v. Gould, 741 F.2d 45, 50 n. 5 (4th Cir.1984). Even if White were actually urging us to consider a waiver theory — which he is not — affirming on the basis of waiver in this case would be highly prejudicial to Kinder. In light of White’s representation to the district court that “Kinder has not waived her privilege by responding to the Court’s questions at the plea hearing” and his subsequent choice not to brief the issue of waiver on appeal, Kinder had absolutely no reason to develop an argument on appeal that her answers to the court’s questions during her plea colloquy constituted a waiver of the privilege with respect to her records.
In sum, it would be most unusual for this court to address sua sponte a non-jurisdictional issue rejected by both parties below and not argued or briefed on appeal. But, even if we were to reach the merits, we would have serious doubts that answers given by a defendant to a judge’s questions during a Rule 11 colloquy would amount to a voluntary waiver.

REVERSED.

. The parties agreed below that Kinder did not "waive[] her privilege by responding to the [district court's] questions at the plea hearing.” J.A. 109.

. The district court also concluded that there were "significant portions” of Kinder's records that did not come within the scope of the therapist-patient privilege. J.A. 109. For example, the district court determined that the privilege did not protect any information provided by Pander to emergency room "triage” staff during the admitting process regarding her mental health history or the particular reason for her visit. J.A. 110. Nonetheless, the district court did not order the disclosure of such records, finding that Kinder’s "self-reported mental health history” during these "triage assessments” was largely "identical to the history provided publicly” during her plea hearing and therefore cumulative. J.A. 110. Accordingly, we need not address whether information passed along for purposes of a "triage assessment” would fall within the privilege.

. The district court indicated that "[wjith the exception of the limited disclosures the Court makes herein, these documents will not be placed in the record unless a higher court orders otherwise. The select documents the Court deems subject to disclosure are provided under seal to provide limited access to the parties to this case only, not the public at large.” J.A. 125.

. The Supreme Court explained that ''[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance.” Jaffee v. Redmond, 518 U.S. 1, 11, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).