# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Phillip W. WOODS
## Operations Specialist Chief Petty Officer (E-7), U.S. Coast Guard

## CGCMG 0401
## Docket No. 1504

## 23 February 2026

General court-martial sentence adjudged on 17 November 2023.

| | |
|---|---|
| Military Judge: | CAPT Emily P. Reuter, USCG |
| Appellate Defense Counsel: | LCDR Thadeus J. Pope, USCG |
| | LT Justin S. Allen, USCG (argued) |
| Appellate Government Counsel: | Mr. John P. Nolan, Esq. |
| | LT Elizabeth M. Ulan, USCG |
| | LT Christopher J. Hamersky, USCG |
| | LCDR Lorhel E. Stokes, USCG (argued) |
| | CDR Anthony M. DeStefano, USCG |
| | CAPT Anita M. Scott, USCG |
| Special Victims' Counsel: | Mr. Paul T. Markland, Esq. |

## BEFORE
## McCLELLAND, BRUBAKER & PARKER
Appellate Military Judges

BRUBAKER, Judge:

A general court-martial of members with enlisted representation convicted Appellant, contrary to his pleas, of one specification of attempted murder and one specification of kidnapping in violation of Articles 80 and 125, Uniform Code of Military Justice (UCMJ). Appellant was sentenced to confinement for twenty years, reduction to E-1, and a dishonorable discharge. Judgment was entered accordingly.

**United States v. Phillip W. WOODS, No. 1504 (C.G. Ct. Crim. App. 2026)**

Before us, Appellant raises eight assignments of error (AOEs):

I. The military judge erroneously concluded evidence from C.W.'s medical records was privileged and not subject to production or use at trial under Military Rule of Evidence (Mil. R. Evid.) 513.[1]

II. The military judge erroneously excluded most of the unredacted portions of C.W.'s 2017 medical records under Mil. R. Evid. 401 and 403.

III. The military judge abused her discretion in concluding that the destroyed evidence was not apparently exculpatory and in crafting "other relief" in lieu of abatement under Rule for Court-Martial (R.C.M.) 703.

IV. The trial counsel engaged in prosecutorial misconduct by making improper closing and rebuttal arguments, which the military judge failed to adequately address in her curative instructions.

V. Unlawful command influence occurred when a "shadow judiciary" composed of other military judges, including the chief trial judge, began to preside de facto over the court-martial.

VI. Appellant is entitled to additional confinement credit.

VII. Appellant was deprived of his constitutional right to a unanimous verdict.

VIII. Cumulative error denied Appellant a fair trial.[2]

In AOE I, we confront an issue that has split both military and civilian courts: whether and when the psychotherapist-patient privilege must give way to an accused's individual rights. We ultimately side with our Army brethren to conclude that acting together, Congress and the President unambiguously removed any exception based on the evidentiary value of protected communications to an accused and that application of this more absolute privilege in a court-martial is constitutional. Accordingly, we conclude the military judge did not abuse her discretion by ruling that portions of a mental health record were privileged under Mil. R. Evid. 513 and denying production.

---

[1] We heard oral argument on AOE I.

[2] Appellant personally asserted AOEs IV-VIII pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

We have considered but summarily deny relief for AOEs IV through VIII.[3] We discuss the remaining two AOEs but conclude there is no prejudicial error and affirm.

## Background

In April 2022, Appellant's wife, C.W., awoke to find Appellant straddling her and cutting her arms with a knife. For two hours, she fought him, attempted to call 911, pleaded with him, and briefly escaped the bedroom, only to be dragged back. After members of his command told Appellant they were on their way to check on him, Appellant returned C.W.'s phone to her, and she called 911. Appellant admitted to first responders and others that he had caused the injuries to C.W.

At trial, the Defense sought to show that C.W. had caused the injuries herself and, having previously been abusive toward Appellant, convinced him to take responsibility. In pursuit of this theory of the case, the Defense sought discovery and later admission of medical records from a 2017 incident where police transported C.W. to an emergency room (ER) after family members reported that she was out of control and posed a threat to herself and others.

## Mil. R. Evid. 513

In 1999, following the Supreme Court's recognition of a federal psychotherapist-patient evidentiary privilege in *Jaffee v. Redmond,* 518 U.S. 1 (1996), the President enacted Mil. R. Evid. 513. It provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made between the patient and a psychotherapist or an assistant to a psychotherapist, in a case arising under the Uniform Code of Military Justice, if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.

Mil. R. Evid. 513(a), *Manual for Courts-Martial, United States* (*MCM*) (2019 ed.).[4]

---

[3] Regarding AOE IV, we conclude that even if there was improper argument, it did not materially prejudice Appellant's substantial rights. *See United States v. Norwood*, 81 M.J. 12, 19 (C.A.A.F. 2021). Regarding AOE VI, Appellant does not have a constitutional right to a unanimous verdict. *See United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023).

[4] Though not yet reflected in the *MCM*, Mil. R. Evid. 513(a) was amended in December 2024 to insert, after the words "confidential communication," the words "including records of such communications." *2024 Amendments to the Manual for Courts Martial, United States,* Exec. Order No. 14130, 89 Fed. Reg. 105,343, 105,364, Annex § 2.

Prior to 2015, one of Mil. R. Evid. 513's enumerated eight exceptions to the privilege was "when admission or disclosure of a communication is constitutionally required." Mil. R. Evid. 513(d)(8) (2012). But "[a]fter observing military judges" use this exception to "routinely breach the privilege in sexual assault cases,"[5] Congress directed that Mil. R. Evid. 513 be modified to strike the "constitutionally required" exception. National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, § 537, 128 Stat. 3292, 3369 (2014). The President subsequently amended Mil. R. Evid. 513 to remove the exception. *2015 Amendments to the Manual for Courts-Martial, United States,* Exec. Order No. 13,696, 80 Fed. Reg. 35,783, 35,819, Annex § 2.(d) (June 22, 2015) ("Mil. R. Evid. 513(d)(8) is deleted.").

Here, Appellant sought production of records pertaining to C.W.'s treatment for a mental or emotional condition during an ER visit in 2017. Partially granting and partially denying the motion, the military judge ordered production of records not privileged under Mil. R. Evid. 513, but she denied production "to the extent the emergency room visit included communications with a psychotherapist for the purpose of facilitating diagnosis or treatment . . . ." App. Ex. 48 at 10 (sealed). She specified that the mental health records would be subject to her in camera review prior to dissemination to counsel.

Despite the production order, the hospital provided the military judge a 72-page record that included both non-privileged information and privileged communications under Mil. R. Evid. 513. The military judge completed her in camera review, redacted portions she deemed privileged, and provided the redacted version to counsel.

Appellant made a second motion for discovery of the full, unredacted records. The military judge denied Appellant's motion, holding that the redacted material from the 2017 records was privileged under Mil. R. Evid. 513, that C.W. asserted and had not waived her

---

(Dec. 20, 2024). The previous version of the rule applies here, but it is worth noting that sister courts considering the amendment thus far have concluded the insertion was a "mere clarification" and does not alter the scope of the privilege. *R.C. by & through Special Victims' Couns. v. Hynes*, 85 M.J. 678, 683–84 (A. Ct. Crim. App. 2025); *In re DD*, Misc. Dkt. No. 2025-02, 2025 WL 914418 (A.F. Ct. Crim. App. Mar. 21, 2025), *appeal dismissed sub nom. D.D. v. United States*, 85 M.J. 464 (C.A.A.F. 2025).

[5] *J.M. v. Payton-O'Brien*, 76 M.J. 782, 787 (N-M. Ct. Crim. App. 2017) (citing Major Michael Zimmerman, *Rudderless: 15 Years and Still Little Direction on the Boundaries of Military Rule of Evidence 513*, 223 Mil. L. Rev. 312, 335 (2015)).

privilege as to that material, and that maintenance of C.W.'s privilege did not violate Appellant's constitutional rights.

On appeal, Appellant makes three arguments as to why the redacted portions of the records were not subject to the privilege: (1) None of the medical professionals who saw C.W. during her 2017 ER visit were "psychotherapists" or "assistants to the psychotherapist" within the meaning of Mil. R. Evid. 513; (2) From the context of unredacted material, it is apparent that some of the redacted material was not privileged because it was merely observational rather than a "communication . . . made for the purpose of facilitating diagnosis or treatment" as required by Mil. R. Evid. 513(a); and (3) Even if the redacted material at issue *was* a confidential communication under Mil. R. Evid. 513, disclosure was still required to vindicate Appellant's constitutional rights.

*Standard of Review*

To the extent that Appellant preserved these objections, we review the military judge's ruling for an abuse of discretion. *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018). To the extent he did not, we review for plain error. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). "Preserving an argument requires a 'particularized objection.' " *United States v. Harborth*, 85 M.J. 469, 475 (C.A.A.F. 2025) (quoting *United States v. Perkins,* 78 M.J. 381, 390 (C.A.A.F. 2019)).

Although Appellant generally sought the full records from the 2017 ER visit, he did not raise the argument that the ER providers failed to qualify as "psychotherapists" or "assistants to psychotherapists" under Mil. R. Evid. 513 below and instead raises it for the first time on appeal. As a result, the record is not fully developed on this issue and Appellant forfeited this objection. He is only entitled to relief if he can demonstrate: (1) there was error; (2) that was plain or obvious; and (3) that materially prejudiced his substantial rights. *United States v. Davis*, 76 M.J. 224, 230 (C.A.A.F. 2017).

Appellant did, however, preserve his second and third objections, so we review these for an abuse of discretion. *Chisum*, 77 M.J. at 179. "An abuse of discretion occurs when a military

judge's decision is based on clearly erroneous findings of fact or incorrect conclusions of law." *United States v. Hernandez*, 81 M.J. 432, 437 (C.A.A.F. 2021).

*Analysis*

Applying these standards, we now consider Appellant's objections in the context of the military judge's decisions, in the order she made them: (1) her initial denial of production or in camera review of privileged communications under Mil. R. Evid. 513; (2) her in camera review of records she had ordered produced and redaction of what she determined were privileged communications; and (3) her denial of Appellant's post-review motion to disclose the materials she had redacted.

1. *Initial Ruling*

The parties do not dispute that because Appellant sought production of records of C.W.'s diagnosis and treatment for her mental or emotional condition, the procedures of Mil. R. Evid. 513(e) applied. *See H.V.Z. v. United States*, 85 M.J. 8, 15 (C.A.A.F. 2024) ("The procedures in M.R.E. 513(e)(1) and M.R.E. 513(e)(2) apply to *all* instances in which a party seeks the production or admission of a patient's mental health records or communications, while the stricter procedures in M.R.E. 513(e)(3) only apply when the moving party seeks production or admission of mental health records that are protected from disclosure by the psychotherapist-patient privilege in M.R.E. 513(a).").

Adhering to these procedures, Appellant moved for in camera review and subsequent discovery of privileged as well as non-privileged portions of the ER records. After conducting a closed hearing, the military judge concluded that Appellant had met his burden to show that *non-privileged* portions of the ER records were relevant and necessary, but that he had not met his burden for in camera review of records of communications protected under the privilege. Accordingly, she ordered the hospital to provide non-privileged records for her in camera review.

We conclude that this was not an abuse of discretion. Before a military judge may order in camera review of protected communications, the moving party has the burden of showing by a

preponderance of the evidence that, inter alia, the requested information meets one of Mil. R. Evid. 513(d)'s enumerated exceptions. Mil. R. Evid. 513(e)(3). Appellant did not assert—and does not assert now—that an enumerated exception applied to confidential communications contained in the ER records. He instead asserts that discovery of the communications was required to protect his constitutional rights to confrontation and to present a complete defense. We disagree.

At the direction of Congress, the President explicitly removed the "constitutionally required" exception from Mil. R. Evid. 513. The effect of doing so is a matter of first impression for this Court and one of controversy among military courts. Although the United States Court of Appeals for the Armed Forces has not yet directly addressed the issue, the Army and Navy-Marine Corps Courts of Criminal Appeals have, with divergent results.

In *J.M. v. Payton-O'Brien*, the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) concluded that "by removing the constitutional exception from the rule and adding the separate requirement that any piercing of the privilege meet one of the remaining seven enumerated exceptions for *in camera* review," Congress and the President had unambiguously strengthened the psychotherapist-patient privilege to make it "absolute—outside of the extant exceptions—without consideration for the constitutional concerns of the [accused]." 76 M.J. 782, 786–87 (N-M. Ct. Crim. App. 2017). But it went on to state that "noble goals and notable policy concerns cannot trump the [accused's] right to 'a meaningful opportunity to present a complete defense.' " *Id.* at 789 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). Accordingly, the court held that there are "situations in which the privacy rights of the victim may yield to the constitutional rights of the accused," such as due process and confrontation. *Id.* at 789.

Accordingly, the *Payton-O'Brien* court imposed the following framework: if the moving party otherwise meets the requirements for in camera review under Mil. R. Evid. 513, but fails to establish an enumerated exception under it, "then the military judge determines whether the accused's constitutional rights still demand production or disclosure of the privileged materials. If so, then the military judge gives the victim an opportunity to waive the privilege for *in camera*

review by the military judge." *Id*. at 790. If the military judge finds that the accused's constitutional rights *are* implicated, the second phase of the *Payton-O'Brien* protocol begins. Now, the military judge asks the victim (or other privilege-holder) to waive the privilege for the purposes of *in camera* review by the judge. If such review convinces the military judge that the privileged materials *do* contain information that the accused is constitutionally entitled to obtain, the military judge will again ask if the victim wishes to waive the privilege, this time as to disclosure to the accused.

"[I]f the victim elects not to waive the privilege after the military judge has determined it is constitutionally necessary, then the military judge may consider remedial measures." *Id.* These may include, but are not limited to: (1) striking or precluding all or part of a witness's testimony; (2) dismissing any charge or charges, with or without prejudice, (3) abating the proceedings permanently, or for a time certain; or (4) declaring a mistrial. *Id.* at 791.

NMCCA advances this protocol to protect the constitutional rights of the accused while:

> scrupulously honor[ing] the victim's choice of whether—and how much—to waive the privilege. The military judge never orders the production or release of materials that do not fall under an enumerated exception to the privilege. Instead, the victim retains the authority to assert the privilege at any time along the process.

*Id.* at 790.

NMCCA has followed this protocol in subsequent cases. *See, e.g., In Re B.M.,* 83 M.J. 704 (N-M. Ct. Crim. App. 2023), *aff'd sub nom. B.M. v. United States,* 84 M.J. 314 (C.A.A.F. 2024), *cert. denied,* 145 S. Ct. 984 (2024); *United States v. Jacinto,* 79 M.J. 870 (N-M. Ct. Crim. App. 2020), *aff'd in part, set aside in part,* 81 M.J. 350 (C.A.A.F. 2021), *modified on reconsideration,* 81 M.J. 464 (C.A.A.F. 2021).

In *United States v. Tinsley*, the United States Army Court of Criminal Appeals (ACCA) came to a different conclusion. 81 M.J. 836 (A. Ct. Crim. App. 2021). The military judge had denied Tinsley's motion to compel production of the victim's mental health records. Tinsley

conceded that his request did not fall under one of the enumerated exceptions to Mil. R. Evid. 513, but asserted that disclosure was required to vindicate his constitutional rights. *Id*. at 847.

ACCA categorically rejected Tinsley's contention. Noting the President's authority to define privileges and their exceptions, it declined "to either 'read back' the constitutional exception into [Mil. R. Evid.] 513, or otherwise conclude that the exception still survives notwithstanding its explicit deletion." *Id.* at 849. After an in-depth analysis, the court concluded that the amended rule is constitutional as written, and military judges need make no additional inquiry once they conclude that the protected information sought does not fall into any of Mil. R. Evid. 513's seven enumerated exceptions. *Id*. at 853. ACCA has since adhered to *Tinsley*. *See, e.g., United States v. Alfaro*, __ M.J. __, No. ARMY 20220282, 2026 WL 407744, at *5 (A. Ct. Crim. App. Feb. 12, 2026); *United States v. DeMayo,* No. ARMY 20220594, 2025 WL 2642269 (A. Ct. Crim. App. Sept. 12, 2025).

Civilian federal courts, too, have reached "different conclusions about whether the psychotherapist-patient privilege must bend" to a criminal defendant's constitutional rights. *United States v. Carter*, No. 2:25-CR-00089-JAW-1, 2025 WL 3524288, at *9–11 (D. Me. Dec. 9, 2025) (compiling cases).

After careful deliberation, we agree with *Tinsley*. We hold that Congress and the President may constitutionally establish a psychotherapist-patient privilege that, much like the attorney-client and clergy privileges, *see* Mil. R. Evid. 502, 503, applies to covered communications without an exception based on an individualized assessment of the information sought and its value to a criminal accused.

In our system, it is Congress and the President—not the judiciary—who establish privileges and their contours and exceptions. Article 36, UCMJ; *United States v. Custis*, 65 M.J. 366, 369 (C.A.A.F. 2007) ("[T]he authority to add exceptions to the codified privileges within the military justice system lies not with this Court or the Courts of Criminal Appeal, but with the policymaking branches of government."). The military rules of evidence expressly delineate privileges and their exceptions to "provide predictability, clarity, and certainty through

specific rules rather than a case-by-case adjudication of what the rules of evidence would be." *United States v. Rodriguez*, 54 M.J. 156, 158 (C.A.A.F. 2000). This is in contrast to civilian federal courts, where, pursuant to Federal Rule of Evidence 501, evidentiary privileges evolve with the development of case law. *Id.* at 157.

The U.S. Constitution is at the pinnacle of the hierarchy of law we apply in each case, so—of course—we always have an obligation to ensure statutes and rules do not deprive an accused of his constitutional rights. *United States v. Romano*, 46 M.J. 269, 274 (C.A.A.F. 1997) (citing *United States v. Lopez*, 35 M.J. 35, 39 (C.M.A. 1992)). In this sense, we fully agree with our Navy-Marine Corps brethren that "we may not allow the privilege to prevail over the Constitution." *Payton-O'Brien*, 76 M.J. at 787–88. But here is where we disagree: however the "constitutionally required" exception may have been interpreted and applied in the past, the policy decision that, moving forward, the privilege applies in courts-martial without any exception based on an individualized assessment of the probative weight of protected communications to an accused's defense is not, by our read, contrary to the Constitution. We come to this conclusion for five reasons.

First, we begin with a presumption of constitutionality. We must give effect to military rules of evidence issued by the President "unless lack of constitutionality is clearly and unmistakably shown." *United States v. Wright*, 53 M.J. 476, 481 (C.A.A.F. 2000) (citing *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998); *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This presumption is even greater when, as here, the President acts pursuant to the express direction of Congress. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635–37 (1952) (Jackson, J., concurring) (noting that when the President acts pursuant to Congress's express or implied authorization, "his authority is at its maximum," and that an action "by the President pursuant to an Act of Congress would be supported by the strongest of presumptions and the widest latitude of judicial interpretation, and the burden of persuasion would rest heavily upon any who might attack it.").

Second, privileges by their very nature limit the truth-seeking function, so the fact that application of a privilege would deprive an accused of information that may be probative to his

defense does not, by itself, answer the question. *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996); *United States v. Custis,* 65 M.J. 366, 370–71 (C.A.A.F. 2007). Although privileges are disfavored and narrowly construed, they are constitutionally permissible when "designed to protect weighty and legitimate competing interests," *United States v. Nixon*, 418 U.S. 683, 709 (1974), and justified "by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Jaffee*, 518 U.S. at 9 (cleaned up). *Nixon* and *Jaffee* were civil cases, but the same principles apply in criminal cases. *See, e.g., Trammel v. United States*, 445 U.S. 40, 50 (1980); *Kinder v. White*, 609 F. App'x 126, 127 (4th Cir. 2015).

The Supreme Court has already determined that the psychotherapist-patient privilege meets these requirements. In *Jaffee*, it held that "a privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to *outweigh the need for probative evidence . . . .*' " 518 U.S. at 9–10 (quoting *Trammel,* 445 U.S. at 51) (emphasis added). "Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.' " *Id.* (quoting *Trammel*, 445 U.S. at 51). "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at 11.

Third, the policy decision to make the privilege applicable without case-by-case consideration of the purported importance of the information to an accused's defense is consistent with *Jaffee*. There, the lower court had "qualified its recognition of the privilege by stating that it would not apply if 'in the interests of justice, the evidentiary need for the disclosure of a patient's counseling sessions outweighed that patient's privacy interests.' " *Id*. at 7 (quoting *Jaffee v. Redmond*, 51 F.3d 1346, 1357 (7th Cir. 1995)). The Supreme Court rejected this "balancing component of the privilege," stating:

> Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. . . . [I]f the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege,

> or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Id*. at 17–18 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) (addressing the attorney-client privilege)).

In *Kinder v. White*, the United States Court of Appeals for the Fourth Circuit applied *Jaffee* in a criminal context. 609 F. App'x at 127–28. The district court had "concluded that an exception to the psychotherapist-patient privilege must be made where the privileged information is necessary to vindicate a criminal defendant's constitutional rights." *Id.* at 130 (cleaned up). Reversing, the Fourth Circuit explained, "In our view, this conclusion is demonstrably at odds with both *Jaffee* and basic principles underlying the recognition of testimonial privileges." *Id.* It emphasized that "when the Court recognizes or expands a privilege . . . it necessarily has *already* determined that the privilege in question 'promotes sufficiently important interests to outweigh the need for probative evidence.' " *Id.* at 131 (quoting *Univ. of Pennsylvania v. E.E.O.C.,* 493 U.S. 182, 189 (1990)). This is one of the most direct answers on this question from a United States Court of Appeals, and we find it compelling. *See also United States v. Portillo*, 969 F.3d 144, 182–83 (5th Cir. 2020) (rejecting contention that as a criminal defendant, Portillo's constitutional rights to confrontation and due process override the privilege); *United States v. Murra*, 879 F.3d 669, 681 (5th Cir. 2018) (citing *Kinder*, 609 F. App'x at 131, with approval).

Fourth, we see no reason in law or logic to treat the psychotherapist-patient privilege as lesser than those applicable to communications to spouses, attorneys, or clergy. In *Jaffee,* the Court explicitly compared the psychotherapist privilege to the spousal and attorney-client privileges. 518 U.S. at 10. And in *United States v. Clark*, the CAAF compared it to the clergy-penitent privilege. 62 M.J. 195, 199 (C.A.A.F. 2005) (citing *MCM* (2000), app. 22, Analysis of the Military Rules of Evidence at A22-44). Yet those privileges are commonly viewed as not dependent on the content of the communications and how helpful it might be to an accused's defense. As one district court judge put it: "Any court would make short work of an argument that the attorney-client privilege can be overcome by a criminal defendant's cross-examination needs. The argument that the psychotherapist-patient privilege is only applicable when not

inconvenient for a criminal defendant is similarly deficient." *United States v. Shrader*, 716 F. Supp. 2d 464, 473 (S.D.W. Va. 2010).

And as another said:

If a victim's attorney or spouse had similarly privileged conversations with her that similarly might help a defendant's cause if revealed, the confidentiality of those communications does not surrender to the defendant's Sixth Amendment rights. If such were the law, what privilege could survive a defendant's assertion of evidentiary need? Lawyers, spouses, even priests, presumably, could be ordered to cough up their notes or memories about the most private and confidential communications in the face of a subpoena from a defendant in a criminal case. The *Jaffee* Court makes it clear that the balancing test advocated by the defendant is not appropriate . . . .

*United States v. Doyle*, 1 F. Supp. 2d 1187, 1190 (D. Or. 1998).

Fifth, the rights invoked by Appellant—to confrontation and to present a complete defense—can be overcome by a properly recognized privilege. The right to present relevant evidence—even when already in an accused's possession—"is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (cleaned up) (holding that a military rule of evidence categorically excluding polygraph evidence does not unconstitutionally abridge an accused's right to present a defense). As a result, the President has "broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *Id.* (quoting *Rock v. Arkansas,* 483 U.S. 44, 56 (1987)).

In fact, the confrontation right might not even be implicated here. Mil. R. Evid. 513 does not curtail cross-examination per se, but production of information that *could* be used in cross-examination. In *Pennsylvania v. Ritchie*, the plurality concluded that the "right to confrontation is a *trial* right," and that the right to confront witnesses at trial does not include the right to *discover* information for later use as confrontation material. 480 U.S. 39, 52 (1987) (plurality opinion) ("If we were to accept this broad interpretation . . . the effect would be to transform the

Confrontation Clause into a constitutionally compelled rule of pretrial discovery. Nothing in the case law supports such a view.").

Although CAAF has not yet had the opportunity to directly address the issue at hand, it has acknowledged that "in certain instances, the psychotherapist-patient privilege seemingly trumps an accused's right to fully confront the accuracy and veracity of a witness who is accusing him or her of a criminal offense" and that "the debate on the confrontation issue is limited by the Supreme Court's decision in *Pennsylvania v. Ritchie* . . . ." *United States v. Beauge*, 82 M.J. 157, 167 (C.A.A.F. 2022) (citing *Ritchie*, 480 U.S. at 53). It added:

> Supreme Court precedent similarly limits Appellant's due process argument. As the Court stated in *Holmes v. South Carolina*, only rules which "infring[e] upon a weighty interest of the accused *and* are arbitrary or disproportionate to the purposes they are designed to serve" will be held to violate the right to present a complete defense.

*Id.* (quoting *Holmes*, 547 U.S. at 324–25).[6]

This brings us to a final point. It is true that CAAF previously concluded that removal of a "constitutionally required" exception had, in effect, no impact on its interpretation of Mil. R. Evid. 412. *United States v. Gaddis*, 70 M.J. 248, 256 (C.A.A.F. 2011) ("[Mil. R. Evid.] 412 cannot limit the introduction of evidence required by the Constitution—although the text of the rule seems to permit such a limitation."). But the rule of exclusion at issue in *Gaddis* is readily distinguishable from Mil. R. Evid. 513, a rule defining a privilege against disclosure. *Gaddis* does not answer the question of whether the Constitution requires that a privilege the Supreme Court has already determined promotes sufficiently important interests to outweigh the need for probative evidence must bend to a judicial, case-by-case assessment of the contents of protected communications and their relative evidentiary value.

In light of all the above, we conclude that it does not. Once a military judge determines that none of the enumerated exceptions of Mil. R. Evid. 513 apply, no further inquiry is required:

---

[6] *But see B.M. v. United States*, 84 M.J. 314, 322–23 (C.A.A.F.), *cert. denied,* 145 S. Ct. 984 (2024) (Ohlson, C.J., concurring) (recommending the procedures articulated in *Payton-O'Brien*, 76 M.J. at 789–92, when military judges are inadvertently exposed to privileged communications).

breaching the privilege by disclosing or conducting in camera review of protected communications is neither justified pursuant to the bounds of the privilege as defined by the President nor required by the U.S. Constitution.

Applying that here, Appellant failed to show that the requested information met one of Mil. R. Evid. 513's seven enumerated exceptions, and he was not constitutionally entitled to pierce the privilege. Accordingly, the military judge did not abuse her discretion by denying in camera review of protected communications.

*2. Continuing In Camera Review and Redacting Protected Communications*

Although the military judge ordered production of only non-privileged information contained in the mental health records, she directed that it first be subject to her in camera review prior to any disclosure. This was authorized under R.C.M. 701(g) and prudent as a means of protecting the psychotherapist-patient privilege from an unauthorized breach. *See* R.C.M. 701(g)(2) Discussion.

Of course, as can almost be anticipated in these cases, an unauthorized breach is precisely what occurred. Commingled with the responsive records the military judge had ordered were nonresponsive, privileged communications. When this happens, one option for military judges to consider is to cease review and return the records to the custodian for strict compliance with the production order. *B.M.*, 84 M.J. at 322 (Ohlson, C.J., concurring). Here, however, where individual, protected communications were interspersed throughout an otherwise unprivileged document, that may not have been practical. Nor was it, in our view, required. The military judge was not "examin[ing]" the communications for content or to determine if disclosure was required within the meaning of Mil. R. Evid. 513(e)(3). She had already followed the procedures of Mil. R. Evid. 513 and determined no protected communications would be disclosed. Instead, she was identifying protected communications and excising them. Under these circumstances, we cannot say it was an abuse of discretion simply to redact the unresponsive portions of the records and provide the redacted version to counsel. *Accord United States v. Alfaro*, __ M.J. __, No. ARMY 20220282, 2026 WL 407744, at *5–6 (A. Ct. Crim. App. Feb. 12, 2026).

Still, contrary to the Government's position at oral argument, a military judge's decisions to excise and not disclose portions of a record are judicial acts subject to appellate review. It is part of our appellate responsibilities to review sealed, undisclosed portions when needed to determine if the military judge erred:

> If the military judge reviews any materials in camera, the entirety of any materials examined by the military judge shall be attached to the record of trial as an appellate exhibit. The military judge shall seal any materials examined in camera and not disclosed . . . . Such material may only be examined by reviewing or appellate authorities in accordance with R.C.M. 1113.

R.C.M. 701(g)(2). R.C.M. 1113, in turn, provides that "appellate authorities may examine sealed matters when those authorities determine that examination is reasonably necessary to a proper fulfillment of their responsibilities under the UCMJ, this Manual, [etc.]." R.C.M. 1113(b)(3)(A).

With this in mind, we continue our review of the military judge's actions.

3. *Whether Redacted Portions Were in Fact Confidential Communications*

Based on the context of unredacted portions of the record, Appellant challenges that the redacted, undisclosed portions were confidential communications within the meaning of Mil. R. Evid. 513. He asserts that they instead pertain to underlying facts that are not privileged under Mil. R. Evid. 513.

Appellant is correct that under Mil. R. Evid. 513, only "confidential communications" between the patient and the psychotherapist "made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition" are subject to the privilege. Mil. R. Evid. 513(a). A patient's diagnoses and treatments are "underlying facts," not confidential communications, and are thus not privileged under the rule. *United States v. Mellette,* 82 M.J. 374, 380 (C.A.A.F. 2022). *Mellette* further clarified that no privilege exists as to "routine medical records, that do not memorialize actual communications between the patient and the psychotherapist." *Id.* at 378.

But Appellant is incorrect in surmising that anything other than confidential communications was redacted. Having ourselves reviewed the sealed records in camera, we are

satisfied that the military judge redacted only portions documenting confidential communications.

*4. Whether Providers were "Psychotherapists" or "Assistants to Psychotherapists"*

To be privileged under Mil. R. Evid. 513, the confidential communication must be "made between the patient and a psychotherapist or an assistant to the psychotherapist . . . ." Mil. R. Evid. 513(a). The rule defines a *psychotherapist* as: "a psychiatrist, clinical psychologist, clinical social worker, or any other mental health professional who is licensed in any State . . . or who holds credentials to provide such services . . . or is a person reasonably believed by the patient to have such license or credentials." Mil. R. Evid. 513(b)(2). It defines an *assistant to a psychotherapist* as "a person directed by or assigned to assist a psychotherapist in providing professional services, or is reasonably believed by the patient to be such." Mil. R. Evid. 513(b)(3).

Appellant, for the first time on appeal, asserts that the ER doctors and other care providers fail to meet these definitions. As discussed, because Appellant did not raise this issue below, he must demonstrate plain error to be entitled to relief.

We are aware of no military jurisprudence addressing whether ER doctors and other providers treating a patient for a mental health condition can meet these definitions under Mil. R. Evid. 513. And while there is some persuasive authority on this point from civilian federal courts interpreting the psychotherapist-patient privilege as recognized in *Jaffee*, it is split.

For instance, in *United States v. Ghane*, 673 F.3d 771 (8th Cir. 2012), the Eighth Circuit declined to extend the federal psychotherapist-patient privilege to the consultations of the defendant with ER personnel. As in our case, the *Ghane* ER admission was precipitated by a mental health crisis. The statements at issue were made to a physician's assistant (PA), who worked under the supervision of a (non-psychiatrist) attending ER physician. The Eighth Circuit focused on the content and context of the communications between the defendant and the PA:

> The psychotherapist-patient privilege contemplates treatment. It does not encompass "care" provided by an ER physician's assistant whose job is to assess incoming patients and conduct intake interviews and evaluations. . . .

> Passing intake information along in a chart does not suffice as "treatment" sufficient to cloak these conversations with the privilege.

673 F.3d at 782, 784. *See also, e.g., United States v. Ray,* 585 F. Supp. 3d 445 (S.D.N.Y. 2022); *E.E.O.C. v. Nichols Gas & Oil, Inc.,* 256 F.R.D. 114 (W.D.N.Y. 2009) (consultation with primary care doctor regarding depression, anxiety, or mental health referral *not* covered by psychotherapist-patient privilege).

A federal district court came to the contrary conclusion in *United States v. Robinson*, 5 F. Supp. 3d 933 (S.D. Ohio 2014). As in *Ghane*, the statements at issue were made by a criminal defendant during a crisis hospital admission for mental health symptoms. Explicitly rejecting the *Ghane* court's approach, the judge in *Robinson* found the federal psychotherapist-patient privilege *does* extend to communications made to a crisis care nurse during admission: "Defendant was speaking to the nurse for the purpose of being admitted to receive treatment. As such, she had a reasonable expectation of confidentiality . . . ." 5 F. Supp. 3d at 939. "For the privilege to have meaning, it must extend to individuals engaged in admitting a patient for mental health treatment." *Id*. *See also, e.g., Finley v. Johnson Oil Co.,* 199 F.R.D. 301 (S.D. Ind. 2001) (extending the privilege to mental health consultations with primary care doctors and other generalists lacking specific psychiatric qualifications).

Here, we know the care team included two licensed emergency physicians and a psychiatric registered nurse, but because Appellant did not raise the issue below, the record is not further developed regarding their qualifications and practice areas. There is no military caselaw on point and at least some civilian courts confronted with similar fact patterns have accepted that statements made to ER staff may be subject to the psychotherapist-patient privilege. Under these circumstances, it is not plain or obvious that the military judge erred by making a similar judgment here. *See United States v. Nieto*, 66 M.J. 146, 151 (C.A.A.F. 2008) (Stucky, J., concurring) ("Error cannot be plain or obvious if the law is unsettled on the issue at the time of trial and remains so on appeal.").

5. *Denial of Post-Review Motion to Disclose*

After receiving the redacted records, Appellant moved to compel production of the redacted portions. The military judge, after conducting a closed hearing and adhering to the procedures of Mil. R. Evid. 513, again denied production.

We conclude that this was not an abuse of discretion. As a general matter, the unauthorized disclosure of protected communications does not waive the privilege, and the non-disclosing privilege holder "can still assert the privilege and prevent the use of the confidential information in a legal proceeding." *United States v. McCollum*, 58 M.J. 323, 339 (C.A.A.F. 2003) (addressing the spousal privilege) (superseded by rule on other grounds); *see also*, *Alfaro*, 2026 WL 407744, at \*6.

We acknowledge that once an unauthorized disclosure has occurred, and a military judge has nonresponsive, privileged mental health records "dumped in her lap," *B.M.*, 84 M.J. at 322 (Ohlson, C.J., concurring), there might be extraordinary circumstances where information within a military judge's possession is of such central importance to an accused's defense that continuing with a trial without disclosing it to the accused would deprive him of a fundamentally fair trial. *See, e.g., Morales v. Portuondo*, 154 F. Supp. 2d 706, 730–31 (S.D.N.Y. 2001) (Chin, J.) (holding that evidence of previously disclosed communications of a person to his attorney that he and others, not the defendants, had murdered the victim were admissible because "its exclusion would render his trial fundamentally unfair. . . . Under these remarkable circumstances, the attorney-client privilege must not stand in the way of the truth.").

But like the Supreme Court in *Swidler & Berlin v. United States*, we do not "need to reach this issue, since such exceptional circumstances clearly are not presented here." 524 U.S. 399, 408 n. 3 (1998). Nothing in the redacted materials approaches such circumstances.

In sum, we conclude that the military judge correctly ensured that, consistent with the scope of the psychotherapist-patient privilege as defined by Congress and the President, protected communications were not disclosed and that this nondisclosure did not violate Appellant's constitutional rights. We emphasize that although the President could have defined

the privilege more broadly, as written, it protects only confidential communications between the patient and a psychotherapist and not the underlying facts of diagnoses and treatment. *Mellette*, 82 M.J. at 378. Accordingly, Appellant had access to and exploited at trial information pertaining to C.W.'s medications, diagnoses, and treatment. Under these circumstances, Appellant's rights to confrontation and to present a full defense were vindicated.

### Admissibility of Redacted Records

Having found no error in the military judge's application of Mil. R. Evid. 513 to limit the *discovery* of C.W.'s mental health records, we now turn to the judge's assessment of the *admissibility* of the redacted mental health records that were made available to Appellant. After multiple attempts to offer the redacted 2017 ER records, the military judge ultimately admitted three of the 72 pages, ruling the remainder was inadmissible under Mil. R. Evid. 401 and 403.[7]

We review a military judge's decision to exclude evidence for an abuse of discretion. *United States v. Maebane*, 86 M.J. 173, 179 (C.A.A.F. 2025). "This abuse of discretion standard is a strict one, calling for more than a mere difference of opinion—the challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. St. Jean*, 83 M.J. 109, 112 (C.A.A.F. 2023) (quoting *United States v. Hendrix*, 76 M.J. 283, 288 (C.A.A.F. 2017)) (cleaned up).

Evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Mil. R. Evid. 401. "The military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." Mil. R. Evid. 403.

---

[7] Within his assignment of error pertaining to admission of mental health records, Appellant incidentally asserts the military judge erred by excluding evidence pertaining to products containing THC in C.W.'s possession. We have considered this, but we conclude there was no prejudicial error.

"Military judges receive wide discretion in conducting balancing under [Mil. R. Evid.] 403 . . . ." *St. Jean*, 83 M.J. at 113. When a military judge articulates her reasoning on the record, we exercise "great restraint" in reviewing her ruling. *United States v. Humpherys*, 57 M.J. 83, 91 (C.A.A.F. 2002) (quoting *United States v. Harris,* 46 M.J. 221, 225 (C.A.A.F. 1997)).

Here, although Appellant disagrees with the result, the military judge fully articulated her reasoning for excluding the evidence under Mil. R. Evid. 401 and 403 on the record. We thus accord her ruling significant deference. As she explained, the records were relevant for their tendency to support Appellant's theory that because C.W. had a mental health crisis and allegedly expressed suicidal ideations in 2017 following certain stressors, it was more likely that in 2022, after experiencing some similar stressors, she was suicidal and caused the injuries to herself. The pages admitted were probative of this. They showed when C.W. was admitted and discharged and indicated that she presented with "behavioral problems (aggressive behavior)" and "expresses suicidal ideation." Def. Ex. K at 3. It was not an abuse of discretion for the military judge to conclude that the remaining 69 pages had diminished probative value that was substantially outweighed by the risks of unfair prejudice, confusing the issues, and misleading the members.

Appellant urges, in particular, that he should have been permitted to present pages that indicated C.W. was a *homicide* risk. But the records were relevant to the extent they made it more likely that, during the charged event in 2022, C.W. was *suicidal* and therefore caused the injuries to herself. The annotation that C.W. supposedly presented in 2017 as some kind of homicide risk, therefore, had limited probative value and was substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the members, and—where the annotation was of questionable provenance and reliability and the point was certainly disputed—creating a "trial-within-a-trial" about whether C.W. was, in fact, ever a homicide risk.

Finally, much of the information not admitted was cumulative of information that *was* admitted—not just the ER records, but testimony from witnesses present at the events precipitating the 2017 ER visit. Giving due deference to the military judge's articulated reasoning, we conclude that she did not abuse her discretion.

**Destruction of Evidence**

Appellant asserts that the military judge erred by failing to abate the proceedings under R.C.M. 703(e) due to the destruction of crime scene evidence. We review for an abuse of discretion. *United States v. Warda*, 84 M.J. 83, 90 (C.A.A.F. 2023) (citing *United States v. Simmermacher*, 74 M.J. 196, 199 (C.A.A.F. 2015)).

> The abuse of discretion standard calls for more than a mere difference of opinion, but instead occurs when the military judge's findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.

*Id*. (quoting *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015)) (cleaned up).

Although "[e]ach party is entitled to the production of evidence which is relevant and necessary," neither party is "entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process." R.C.M. 703(e). The rule provides an exception:

> However, if such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

R.C.M. 703(e)(2).

A party seeking redress under R.C.M. 703 for lost or destroyed evidence thus must demonstrate that: (1) the evidence is of such central importance to an issue that it is essential to a fair trial; (2) no adequate substitute is available; and (3) the unavailability is not the fault of the requesting party or could have been prevented by it. *See Simmermacher*, 74 M.J. at 199. If a military judge concludes that a party has met this burden, and "[i]f a continuance or other relief cannot produce the missing evidence, the remaining remedy for a violation of R.C.M. 703[(e)](2) is abatement of the proceedings." *Id*. at 201.

Here, the Coast Guard Investigative Service (CGIS) investigated the crime scene at the Woods' family home. They took hundreds of photographs, conducted three-dimensional imaging of the scene (known as a "FARO scan"), and collected blood swabs and numerous items deemed

relevant, including doorknobs, a section of drywall containing a suspected palm print, the mattress cover, mattress protector, bedding and a towel from the bed, and a black area rug from the bedroom.

The home, which was aboard a military housing area, was managed by a private company, Island Palms Communities, LLC, and Appellant was the only person on the lease. After CGIS released the scene, C.W.'s mother and a friend who were helping prepare the home for C.W.'s return from the hospital cleaned it, primarily using bleach and water. Island Palms then conducted a biohazard cleanup, which included removing and disposing of the mattress from the master bedroom.

The military judge concluded that the destruction of the evidence did not constitute a violation of R.C.M. 703. She nonetheless granted Appellant's request for an expert consultant to assist in using and understanding the FARO scan.

Appellant now asserts that granting an expert consultant in FARO scans was an inadequate remedy for an R.C.M. 703(e) violation, and that abatement was required due to the destruction of evidence from the mattress, the stairway carpet, and the overall crime scene, such as the walls and floors in the home. We disagree.

First, granting the expert consultant was not a remedy for a violation of R.C.M. 703(e). The military judge expressly held there was no such violation. It was a remedy for a related, but different issue: trial defense counsel's inability, despite repeated attempts, to visit the alleged crime scene before new tenants arrived and it had substantially changed. Granting a consultant to help trial defense counsel interpret the FARO scan does nothing to support Appellant's assertion that the military judge failed to understand that abatement was required for an R.C.M. 703 violation. She was quite clear about the law regarding R.C.M. 703 and found no violation.

Second, her conclusion that there was no R.C.M. 703 violation was not an abuse of discretion. It is true that in her ruling, she analyzed some factors that apply to whether destruction of evidence constitutes a due process violation, such as whether the government's

failure to preserve certain evidence was the result of bad faith. But that is because her ruling considered both whether there was a due process violation—which is not challenged here—as well as whether there was an R.C.M. 703 violation. There is no indication that the military judge misunderstood or misapplied the law. For each item, she expressly held that under Mil. R. Evid. 703(e)(2), Appellant failed to show that the destroyed evidence was of such central importance that it was essential to a fair trial or that there was an inability to obtain comparable evidence by other reasonably available means. These conclusions are supported by her findings of fact, which are not clearly erroneous, and are well within her range of discretion.

Because the military judge properly concluded there was no violation under R.C.M. 703(e), she did not abuse her discretion for failing to abate the proceedings.

## Decision

We determine that the findings and sentence are correct in law and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as entered into the record, are affirmed.

Judges McCLELLAND and PARKER concur.



For the Court,

Sarah P. Valdes
Clerk of the Court